UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

| | |
|---|---|
| BEULAH ESTEP, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7: 05-265-DCR |
| ) | |
| V. ) | |
| ) | |
| JO ANNE BARNHART, ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment filed by Plaintiff Beulah Estep (Estep) and Defendant Jo Anne Barnhart, Commissioner of Social Security (the Commissioner).  [Record Nos. 9 and 10]  Through this action, Estep seeks to reverse the decision of an administrative law judge (ALJ) concluding that she was not entitled to supplemental security income.  However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed.  For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Estep.

### I.   BACKGROUND

Estep filed an application for Supplemental Security Income (SSI) on April 28, 2003. The claim was denied initially and upon reconsideration.  Thereafter, Estep requested a hearing before an ALJ.  On November 3, 2004, a hearing was conducted before ALJ Andrew J. Chwalibog.  During the hearing, the ALJ heard testimony from Chwalibog and Melissa Glannon, a vocational expert (VE).  Thereafter, the ALJ issued a decision denying benefits to Estep.

[Transcript (Tr.), pp. 14-23]  The ALJ concluded that Estep retained the residual functional capacity to perform a significant range of medium work.  [Tr., p. 23]  Estep's request for review was denied by the Appeals Council on August 1, 2005.  [Tr., pp. 4-6]

At the time of the hearing, Estep was a 43 year-old individual with a seventh grade "limited" education. [Tr., p. 14] She has no vocationally relevant past work experience. [Tr., p. 14] Estep alleges disability beginning April 17, 2003, due to back problems, knee problems, hearing loss, vision loss, clogged arteries, tumor, chest pain, anxiety, panic attacks, and depression.  [Tr., pp. 14-15]  After a careful review and evaluation of the medical evidence of record and testimony at the hearing from the Claimant and the VE, the ALJ found that Estep had the residual functional capacity to perform a significant range of medium work. [Tr., p. 23]  He concluded that Estep was not disabled as defined in the Social Security Act and regulations. [Tr., p. 23]

## II.  LEGAL STANDARD

A claimant's social security disability determination is made by an ALJ in accordance with a five-step analysis.  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  First, a claimant must demonstrate that she is not currently engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. § 416.920(b).  Second, a claimant must show that she suffers from a severe impairment.  20 C.F.R. § 416.920(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months, which meets or equals a listed impairment, she will be considered disabled without

regard to age, education, and work experience.  20 C.F.R. § 416.920(d).  Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the Claimant's residual function capacity (RFC) and relevant past work to determine if she can do past work.  If she can, she is not disabled.  20 C.F.R. § 416.920(f).

Under the fifth step of this analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education and past work experience to determine if she can perform other work.  If she cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. § 416.920(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002), (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied.  *Wyatt v. Sec'y of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992).  The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lashley v. Sec'y of Health and Human Services*, 708 F.2d 1048, 1053 (6th Cir. 1983).  While significant

deference is accorded to the ALJ, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must be taken into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Garcia v. Sec'y of Health and Human Services*, 46 F.3d 552, 555 (6th Cir. 1995); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Sec'y of Health and Human Services*, 893 F.2d 106, 108 (6th Cir. 1989). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

In determining whether the ALJ's opinion is supported by substantial evidence, courts may not "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). It is the job of the ALJ to make credibility findings after listening to testimony, observing the claimant's demeanor, and evaluating the testimony in light of the written evidence. Credibility determinations are particularly within the province of the ALJ. *Gooch v. Sec'y of Health and Human Services*, 833 F.2d 589 (6th Cir. 1987); *Villarreal v. Sec'y of Health and Human Services*, 818 F.2d 461, 464 (6th Cir. 1987).

### III.   DISCUSSION

Estep raises one claim in this action. She asserts that the ALJ did not properly consider certain statements in the consultative examination report from Dr. Wayne Edwards. [Tr., pp. 145-150] Specifically, the Claimant argues that the ALJ did not properly consider the following two points mentioned in Dr. Edwards' opinion: (1) "[a]t this time, the patient would have difficulties working eight hours a day, five days a week without psychiatric symptoms, that being depression and being lethargic, given her current level of treatment;" and (2) "[t]he patient would benefit from having special supervision at least during a training period." [Tr., p. 149]

According to Estep's counsel, under Social Security Ruling 96-8p, "the RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p. Estep argues that this rule was violated here because the RFC adopted by ALJ Chwalibog conflicted with Dr. Edwards' findings as stated above. However, as explained more fully below and contrary to Estep's assertions, the ALJ fully explained and discussed Dr. Edwards' conclusions and opinions together with other medical evidence bearing on this issue.

After reviewing ALJ Chwalibog's decision, it is clear that the ALJ reviewed and discussed all relevant evidence presented, including the report of Dr. Edwards. Dr. Edwards' report appears at pages 145-50 of the administrative record. ALJ Chwalibog discussed and summarized this report throughout his decision. For example, at page 3 of his decision, the ALJ relies upon Edwards' report in concluding that Estep has a severe mental impairment. [Tr. 16]

Further, and perhaps more importantly, the ALJ references this report in addressing the "B" criteria of Listing 12.04. After concluding that Estep had "mild" limitations in the area of "activities of daily living" [*i.e.*, the first area of "B" criteria], the ALJ determined that she suffered "moderate" limitations in the areas of "social functioning" [i.e., the second area of "B" criteria] and in the area of "concentration, persistence and pace" [*i.e.*, the third area of the "B" criteria]. The ALJ stated the following:

> The first area of the "B" criteria, "activities of daily living," includes adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for grooming and hygiene using telephones and directories, using a post office, et cetera . . . *She previously reported to Dr. Edwards that although her daughter handled the household chores, she remained capable of driving, using public transportation, telephoning, and using the postal service without significant difficulty.* Accordingly from a mental health standpoint, she is not found to have more than "mild' limitations in this area of functioning
>
> The second area of the "B" criteria, "social functioning," refers to an individual's capacity to interact appropriately and communicate effectively with others. *[The claimant] reported to Dr. Edwards that she gets along "okay" with her family and gets along with her neighbors "fine." She reported that she did not have any friends and although she was noted to be slow in her responses, she was able to relate appropriately to Dr. Edwards.* Accordingly, no more than moderate" limitation is found in this area.
>
> The third "B" criteria, concentration, persistence and pace" refers to the ability to sustain focused attention sufficiently long enough to permit timely completion of tasks commonly found in work settings. *The claimant has reported poor memory and concentration and she was noted to have some deficits in these areas upon mental status examination by Dr. Edwards. She has further noted some difficulty sustaining attention to complete tasks at hand. However, Dr. Edwards notes appropriate understanding and remembering capabilities in order to follow one to two step simple commands which would suggest that she would be no more than "moderately" limited in this area.*

(Emphasis added.) [Tr., p. 17] In addition to the A and B criteria, the ALJ concluded that Estep did not meet the final C criteria because no evidence was presented that her alleged mental illness caused an inability to function independently outside the area of her home. [Tr., p. 18]

The ALJ's credibility assessment also supports his ultimate conclusion regarding Estep's limitations. At page 6 of his report, ALJ Chwalibog states, "I find that the credibility of the claimant's subjective complaints (and alleged related functional limitations) to be only fair at best." [Tr., p. 19] After outlining the items of evidence supporting his determination, the ALJ stated that "[a] review of the overall record does not indicate that [Estep's] psychiatric symptoms are manifested at a degree of severity which would preclude all work activity." Further, he noted that he "did not afford full credibility to the claimant's subjective statements." [Tr., p. 19]

And after discussing issues of credibility, the ALJ again outlined the medical and other evidence presented in support of Estep's claims in reaching his final determination regarding her functional limitations. In doing so, the ALJ relied heavily on the findings of Dr. Edwards. In his decision, the ALJ noted that:

> While I noted that the claimant's treating therapist recently submitted an essentially "disabling" assessment, I do not afford significant weight to such opinion as I note that he is not as qualified as Dr. Edwards, the consultative psychological evaluator, who indicates that the claimant remains capable of engaging in simple, routine work activity (Exhibits 5F, 13F). Also, as noted previously, such limitations are further inconsistent with her GAF which indicates only "moderate" severity/symptoms. Her psychiatric treatment has been limited and her therapist further bases his opinion on limited social skills and psychotic symptoms. However, I note that although she is somewhat limited socially, she remains capable of interacting appropriately as evidence by her rapport with Dr. Edwards and she, herself, reports that she relates adequately with family and neighbors. I further note that there was no indication of psychotic symptoms during Dr. Edwards' evaluation and he finds the claimant to be capable of performing simple work-related tasks. Additionally, he finds that she is able to

>    ask simple questions and request assistance; has appropriate understanding and remembering capabilities in order to follow one to two step simple commands; can identify normal hazards and take relatively appropriate precautions; demonstrate an ability to adapt to changes in a day to day work setting without significant impairment; and was able to relate appropriately.

[Tr., p. 20]

Thus, based on this evidence, the ALJ found that Estep had the following residual functional capacity:

>    I find that she is "moderately" limited in the ability to: understand, remember, and carry out detailed instructions, complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work setting, yet capable of understanding, remembering, and persisting with routine, even-paced simply asks (sic); relating adequately in lower social demand situations; and adapting to expected routine task demands.

[Tr., p. 20]

Having reviewed the ALJ's decision in its entirety, it is apparent that he considered all the relevant evidence – including Dr. Edwards' report – in making this RFC assessment notwithstanding the failure to discuss the specific two findings referenced by the Claimant. Moreover, the Court finds that these two statements do not conflict with ALJ Chwalibog's RFC. With respect to the first statement, the Court notes that Dr. Edwards' concluded that Estep would have "difficulties working." [Tr., p. 149] He did not, however, opine that she was totally disabled. Further the ALJ found depression a severe impairment and reduced Plaintiff's overall work ability to medium level. Thus, Dr. Edwards' finding that Estep suffered from depression and "being lethargic" were adequately reflected in the RFC. [Tr., p. 149] Likewise, the Court cannot conclude that Dr. Edwards' statement that "[t]he patient would benefit from having

special supervision at least during a training period" conflicts with ALJ Chwalibog's RFC assessment. [Tr., p. 149]

### IV. CONCLUSION

After reviewing the briefs submitted by the parties and the record before the ALJ, the Court finds that substantial evidence supports the ALJ's opinion. Accordingly, it is hereby

**ORDERED** as follows:

1. Claimant's Motion for Summary Judgment [Record No. 9] is **DENIED**;

2. The Commissioner's Motion for Summary Judgment [Record No. 10] is **GRANTED**;

3. The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 9th day of February, 2006.



Signed By:
*Danny C. Reeves* DCR
United States District Judge